The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Wanda Blanche Taylor and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award, except for the modifications to Findings of Fact 13, 14 and 15 concerning causation.
**********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement dated August 12, 1996 and at the hearing on August 14, 1996 as:
STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. At all relevant times defendant-employer was insured for workers' compensation coverage with Michigan Mutual Insurance Company.
4. The parties, through counsel, stipulated the following into evidence without further need for verification or authentication:
 — Stipulated Exhibit 1: packet of medical records for Elvis Harris, Jr. from Dr. Peter G. Dalldorf, Moses Cone Emergency Room and Wesley Long Emergency Room;
 — Stipulated Exhibit 2: Answers to Defendants' Interrogatories.
5. The parties stipulated that plaintiff's average weekly wage might be determined by a Form 22.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On May 15, 1994, plaintiff was a fifty-eight year old male who had been employed on a farm before becoming employed with defendant-employer seven years prior to that date on September 1, 1987. On May 15, 1994, plaintiff was employed with defendant-employer as a general floor person and his duties included driving trucks, delivering flour, cornmeal and dogfood, cleaning up, loading trucks, making feed, putting feed in bags and cleaning pits. Plaintiff's regular shift with defendant-employer was from 8:00 am to 5:00 pm. Plaintiff then had a second job with defendant-employer approximately three nights per week. He would return from 5:30 pm until 11:00 pm to clean up.
2. On May 15, 1994, plaintiff was working on the feed packer machine filling two pound bags with hog feed. To fill the bags on this machine, the plaintiff was required to open the door of the machine, push the lever up, place the bag on the device, shut the door, lock the door, hit a button to start the machine and then pull the lever down before the bag would fill up. The lever involved in this process was a brake. This brake could be adjusted and was adjusted by the different people who worked on this machine to varying degrees of difficulty. The plaintiff had worked on this machine before, but did not know how to adjust the lever. On May 15, 1994, plaintiff opened the door and pushed the lever up. He then placed the bag on the machine, shut the door and locked it. He then mashed the button to start the machine and went to pull the lever down to start the machine. The lever was adjusted very tightly for someone else's strength and when the plaintiff went to pull it down he felt an immediate pain in his right wrist. Plaintiff experienced immediate pain and his wrist began to swell. Plaintiff reported this incident to his supervisor, Larry Miller and asked to be allowed to go home. Mr. Miller requested that the plaintiff stay until he had finished filling the two pound bags. Plaintiff's wrist continued to swell and plaintiff eventually had to go home before he finished the two pound batch of hog food.
3. Plaintiff did not go to the doctor or seek medical treatment on May 15, 1994; however, he did remain out of work for two and a half days at this time. After plaintiff returned to work two and a half days later, his right wrist still hurt but it did not feel as if it was getting worse. Over the next several months, he continued to have some pain in his wrist and missed several days per month because of his right wrist. He usually missed time for wrist pain after working on the feed packer machine.
4. On December 20, 1994, plaintiff visited Moses H. Cone Hospital Emergency Room because a ganglion cyst had appeared on his right wrist and he was experiencing a solid and serious ache up and down his arm from his right wrist up to his right elbow.
5. On April 10, 1995, plaintiff presented to Dr. Peter G. Dalldorf, an orthopaedic surgeon, complaining of significant right wrist pain. Plaintiff was suffering from scapholunate advanced collapse which results from a torn ligament which is not repaired and over a period of many months or a year the bones of the wrist move apart. It can take up to a year for this condition to result following a torn ligament. The symptoms of the torn ligament appear to be better and bearable before the bones collapse over time and the symptoms increase and become unbearable.
6. On April 18, 1995, plaintiff underwent a proximal Row carpectomy on his right wrist.
7. On June 21, 1995, plaintiff was released by Dr. Dalldorf to return to light duty with no heavy lifting with the right hand. At that time plaintiff was not able to do janitorial duties which required him to push, pull, use a mop or carry a bucket.
8. On July 26, 1995, plaintiff reached maximum medical improvement of his right wrist and was released by Dr. Dalldorf to return to work at a job with less lifting or light janitorial duties.
9. On August 28, 1995, plaintiff returned to Dr. Dalldorf with aggravated right wrist symptoms and pain after he attempted to use a shovel, rake and lift heavier weights.
10. Plaintiff continues to be unable to bend his right wrist and is restricted to wearing a brace on his right wrist. He remains unable to do heavy lifting with his right wrist.
11. Plaintiff last worked with defendant-employer on March 31, 1995. When plaintiff sought light work with defendant-employer to accommodate his right wrist pain, no such work was provided.
12. Plaintiff obtained employment on or about November 1, 1995 when he became employed with Urban Ministries where he works four hours per day twenty hours per week at a rate $4.31 per hour. That job involves sweeping of the parking lot, emptying trash bins, blowing leaves and trash off the sidewalk and light cleaning with a broom, mop and dustpan inside.
13. The incident on May 15, 1994, when plaintiff injured his wrist while turning a tightly adjusted lever on the feed packer machine, constituted an interruption of plaintiff's normal work routine and was, therefore, an injury by accident arising out of and in the course of his employment with defendant-employer.
14. As the result of his May 15, 1994 injury by accident, plaintiff sustained a scapholunate advanced collapse of the right wrist which resulted in pain and made surgery necessary.
15. As the result of his May 15, 1994 injury by accident, plaintiff was unable earn wages in his former employment with defendant-employer or in any other employment from April 1, 1995 through October 31, 1995, after which time plaintiff became employed.
16. As a direct and proximate result of his May 15, 1994 compensable injury to his right wrist, plaintiff sustained a twenty percent permanent partial impairment to the right arm.
17. On May 15, 1994, plaintiff earned as a result of his employment with defendant-employer an average weekly wage of $244.15, yielding a compensation rate of $162.77.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On May 15, 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in that he sustained a torn ligament which resulted in a scapholunate advanced collapse and resultant pain. G.S. § 97-2(6).
2. From April 1, 1995 through and including October 31, 1995 plaintiff was incapable because of his work-related right wrist injury and the resultant pain, to earn wages which he was receiving at the time of his injury at the same or any other employment. G.S. § 97-29.
3. Plaintiff is entitled to temporary total disability compensation benefits at the rate of $162.77 per week from April 1, 1995 through and including October 31, 1995 for the disability he sustained as a result of his injury by accident to his right wrist. Id.
4. As a result of his May 15, 1994 compensable injury by accident, plaintiff sustained a twenty percent permanent partial disability of his right arm, for which plaintiff is entitled to compensation at the rate of $162.77 per week for a period of forty-eight weeks. G.S. § 97-31(13).
5. Plaintiff is entitled to have defendant-employer provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen the period of disability. G.S. § 97-2(19); G.S. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant-employer shall pay compensation to plaintiff at the rate of $162.77 per week for the period from April 1, 1995 through and including October 31, 1995. This compensation has accrued and shall be paid in a lump sum, subject to a reasonable attorney's fee approved in Paragraph 3.
2. For his twenty percent permanent partial disability of the right arm, defendant-employer shall pay permanent partial disability to plaintiff at the rate of $162.77 per week for a period of forty-eight weeks. Said amount shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved in Paragraph 3.
3. A reasonable attorney's fee in the amount of twenty percent of the compensation due plaintiff under Paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid by deducting from those sums and paid directly to plaintiff's counsel.
4. To the extent that the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendant-employer shall pay all medical expenses incurred by plaintiff as a result of his compensable injury when bills for the same have been submitted through defendant-employer to the Industrial Commission and approved by the Commission.
5. Defendant-employer shall pay the costs.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER
S/ ______________ THOMAS J. BOLCH COMMISSIONER